UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

JESSICA ANNE MARIE FOUST,

                Plaintiff,

     vs.

FAUST, C/O OSCI; FREEMAN, C/O
OSCI,

              Defendants.

Case No. 2:23-cv-00168-MK

**OPINION AND
ORDER**

---

**KASUBHAI,** United States Magistrate Judge:

       Plaintiff, proceeding *pro se*, an adult in custody ("AIC") of the Oregon Department of

Corrections, filed this action pursuant to 42 U.S.C. § 1983 (Section 1983) against correctional

officers Faust and Freeman ("Defendants"). Plaintiff alleges that Defendants violated her Eighth

Amendment rights by subjecting her to cruel and unusual conditions of confinement and being

deliberately indifferent to her serious medical needs. Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 44, 60. All parties have consented to jurisdiction by a U.S. Magistrate Judge. ECF No. 52. For the reasons below, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

## BACKGROUND

On June 27, 2021, there was an "extreme heat wave" in Salem, Oregon where Plaintiff was confined at Oregon State Correctional Institution. Foust Decl. 1, ECF No. 60-1. Staff provided AICs with ice and had fans located outside the cells that were kept running at all times. *Id.* Plaintiff states that more fans were supposed to be put on her unit but were instead put in "honor housing" or for staff's personal use. *Id.* Plaintiff alleges that she was provided insufficient ice, that the ventilation in her cell did not work, that she was unable to open the window because "you could not touch it without burning our hands" and that opening the window "was like opening an oven door." *Id.* Plaintiff's cellmate asked multiple times that she and Plaintiff be allowed to get ice, but staff "kept putting it off to sit around and play on their phones." *Id.* Plaintiff was allowed to "get a single tumbler cup of ice that melted within about 5 minutes." *Id.*

Around 2:00 p.m., Defendant Faust began to run the ice line for the quarantine cells. At some point after this, Plaintiff began dry heaving and shaking inside her cell. *Id.* Plaintiff's cellmate yelled "man down! My celly needs medical attention!" *Id.* at 2. Plaintiff heard Defendant Faust tell her cellmate to "shut the fuck up." *Id.* Plaintiff's cellmate then screamed "at the top of her lungs" for help and medical attention, banging and kicking at the cell door. *Id.*

Plaintiff heard Defendant Faust scream again at her cellmate to "shut the fuck up" and "shut up." *Id*.[1]

At the time of these events, Defendant Freeman was in the "control box," an enclosed space with windowed walls, 25-30 feet away from Plaintiff's cell. Freeman Decl. ¶ 9. There was "at least one plastic partition" between the control box and Plaintiff's cell. Freeman Decl. ¶ 9. Defendant Faust was located at the ice machine, located one level down and "across the dayroom" from plaintiff's cell. Freeman Decl. ¶ 9. Neither Defendant recalls hearing Plaintiff or her cellmate call for help. Freeman Decl. ¶ 9; Faust Decl. ¶ 6.

After 15-20 minutes of Plaintiff's cellmate yelling for attention, Defendants called for a medical response. Faust Decl. 2. Once Health Services personnel arrived at 3:45 p.m., they noted that it was "very warm," and that Plaintiff was "sitting up and hyperventilating but able to articulate her symptoms." Vizina Decl. ¶ 4. Plaintiff was provided with cool towels, an ice bag, and intravenous fluids until her vital signs returned to normal levels. *Id*. She was advised to drink fluids and rest. *Id*.[2]

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute

---

[1] Plaintiff's declaration includes further detail about what happened next, including an alleged conversation between Defendants about the call for help. Pl. Decl. 2. However, that evidence is based on a third-hand account of that conversation by an "AIC Zane" who has not provided a declaration. Plaintiff lacks personal knowledge regarding this conversation and her recounting of AIC Zane's statement about that overheard conversation is inadmissible hearsay. Fed. R. Evid. 802.

[2] Plaintiff's motion and supporting declarations contain additional detail regarding the treatment she received following these events. However, the only Defendants in this case are Defendants Faust and Freeman. The alleged action or inaction of others following Defendants' involvement are not relevant to the resolution of these motions.

as to any material fact and the [moving party] is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

### I. Section 1983

To state a civil rights claim under Section 1983, a plaintiff must allege that (1) a person acting under color of law (2) deprived the plaintiff of a federal constitutional right. 42 U.S.C. § 1983; *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011). Plaintiff must show that each named defendant, through their own individual actions, violated Plaintiff's constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Here, Plaintiff alleges violations of her Eighth Amendment rights based on (A) the conditions of her confinement during an extreme heatwave, and (B) deliberate indifference to her serious medical needs.

A.      **Conditions of Confinement**

To prove an Eighth Amendment violation based on prison conditions, the claimant must

satisfy a two-part test. First, under the objective part of the test, they must show that "defendants

deprived the plaintiff of the minimal civilized measure of life's necessities." *Grenning v. Miller-*

*Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (internal quotation and citation omitted). Second, the

subjective part of the test requires a showing that the defendants acted with deliberate

indifference. *Id*.

As to the objective prong, "[s]*ome* conditions of confinement may establish an Eighth

Amendment violation 'in combination' when each would not do so alone, but only when they

have a mutually enforcing effect that produces the deprivation of a single, identifiable human

need such as food, warmth, or exercise—for example, a low cell temperature at night combined

with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

Here, Plaintiff and Defendants present conflicting evidence on the severity of the heat,

the extent to which Defendants took measures to provide adequate relief from the heat, and

whether those measures were sufficient to prevent unconstitutional conditions. For example,

Plaintiff contends that the ice machines were not producing ice properly, and that "staff took no

measures to insure we would have reprieve from the excessive heat other than to put in cooling

stations outside." Pl. Decl. 1. She describes extreme conditions inside her cell, and states that the

ventilation in her cell did not work. *Id*. She does agree that there were fans on the units, that her

window was covered at all times, and that she was allowed a "single tumbler cup of ice." *Id*. On

the other hand, Defendants claim that they were running an ice line and filling pitchers with ice

for AICs, set up additional fans, allowed AICs to wear shorts instead of pants and to cover

windows to block the sun, and provided access to sprinklers/misters outside and electrolyte packs

and cooling towels. Faust Decl. ¶ 4; Freeman Decl. ¶¶ 6-8. The factual dispute on these issues

precludes summary judgment for either party on the objective prong. *See, e.g.*, *Johnson v. Lewis*,

217 F.3d 726, 732 (9th Cir. 2000) (denying summary judgment in favor of the defendants where

there were disputed issues of fact regarding the extent and adequacy of mitigation provided to

AICs exposed to excessive heat).

As for the subjective prong, there is also a genuine issue of material fact as to

Defendants' deliberate indifference. Deliberate indifference "is a question of fact subject to

demonstration in the usual ways, including inference from circumstantial evidence…and a

factfinder may conclude that a prison official knew of a substantial risk from the very fact that

the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The same disputes of fact

that prevent summary judgment on the objective prong likewise prevent it on the subjective

prong. If the conditions were as Plaintiff describes, a jury could find that a substantial risk of

harm to AICs was obvious. But if the conditions were as Defendants describe, a jury could

likewise conclude that such risk was not obvious. In sum, the existence of a genuine issue of fact

on the issues of the extremity of the heat inside the cells and the extent of the mitigation

measures provided precludes summary judgment for either Plaintiff or Defendants on the merits

of this claim.

### B.    Deliberate Indifference to Serious Medical Need

Prison officials violate the Eighth Amendment's proscription against cruel and unusual

punishment when they act with deliberate indifference to an AIC's serious medical needs. *Estelle*

*v. Gamble,* 429 U.S. 97, 104 (1976). Deliberate indifference exists when a prison official knows

that an AIC faces a substantial risk of serious harm and fails to take reasonable measures to abate

the risk. *Id.*; *see also Farmer,* 511 U.S. at 847; *Toguchi v. Soon Hwang Chung,* 391 F.3d 1051,

1057-58 (9th Cir. 2004). Deliberate indifference to an AIC's serious medical needs may be manifested when prison officials deny, delay, or intentionally interfere with medical treatment, or by the way prison officials provide medical care. *Gamble*, 429 U.S. at 104-05; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). The indifference must be substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between inmates and medical personnel do not rise to the level of a constitutional violation. *Gamble*, 429 U.S. at 105-06; *Toguchi*, 391 F.3d at 1057.

Here, Plaintiff has provided evidence in the form of her declaration that her cellmate yelled "man down" at the top of her lungs[3] and that Plaintiff needed medical attention and that Defendant Faust told her to "shut the fuck up" several times. There is also evidence in the record from which a jury could conclude that Defendant Freeman would have heard Plaintiff's cellmate given his proximity to her cell. On the other hand, disputing that evidence, Defendants have both testified that they did not hear Plaintiff's cellmate. Defendants also argue that even if they did hear Plaintiff's cellmate, they cannot have been deliberately indifferent to Plaintiff's serious medical needs where she was provided medical attention within 15-20 minutes of the first call for help.

The Court finds that genuine issues of material fact preclude entry of summary judgment in favor of either party. Specifically, there is a factual dispute about whether Defendants heard Plaintiff's cellmate's call for help that must be resolved by a jury. Defendants' contention that even if they had heard the call for help, the short minute delay cannot have amounted to

---

[3] Although Defendants contend that this statement is inadmissible hearsay under Fed. R. Evid. 801-802, the Court finds that it is not offered for the truth of the matter asserted, but rather as evidence of "effect on the listener" and is therefore admissible for the purpose of establishing Defendants' knowledge or awareness that Plaintiff was "down" and in need of medical attention.

deliberate indifference, is unavailing. A reasonable jury could find that Defendants' failure to respond to a report that an AIC was "down," particularly in light of the extreme heat conditions, amounts to deliberate indifference. Accordingly, neither Plaintiff nor Defendants are entitled to summary judgment.

## II.    Qualified Immunity

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). The purpose of qualified immunity is to "strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231). Qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231.

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Here, the Court has already found that Plaintiff has presented sufficient evidence from which a reasonable jury could find that her rights to constitutionally adequate conditionate confinement and medical care were violated.

Thus, the first prong of the analysis is satisfied, and the remaining question is whether those rights violated were clearly established in light of the specific context of the case.

The Supreme Court has emphasized that the asserted right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (brackets and internal quotation marks omitted).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority[.]' " It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citations omitted). In other words, while qualified immunity does not require "a case directly on point, [ ] existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Court turns to evaluating each of the claims in turn.

### A.    Conditions of Confinement

As noted above, there is a factual dispute on the issue of the extremity of the conditions and what mitigation measures Defendants provided to Plaintiff. Viewing that evidence in the light most favorable to Plaintiff, the question is whether—in light of the extreme heat conditions Plaintiff describes—every reasonable official would have understood that the provision of outdoor cooling units, fans located outside of cells, occasional provision of "a single tumbler cup of ice," and covering cell windows violated Plaintiff's clearly established rights. Plaintiff has identified no controlling case law establishing such a clear violation under these facts.

It has been clearly established since 1991 that the deprivation of a human need—such as adequate temperature—combined with a failure to mitigate that condition, can amount to an

Eighth Amendment violation. *See Wilson*, 501 U.S. at 304. But here, Defendants did take steps to mitigate the temperature conditions. And Plaintiff has not identified, nor could this Court locate, any controlling case law finding a constitutional violation in similar circumstances. The record and case law before the Court do not provide a basis to second-guess the steps that Defendants took here to mitigate the extreme heat conditions. Without case law to support that every reasonable official would understand that such steps were insufficient to prevent unconstitutional conditions of confinement, Defendants are entitled to qualified immunity. Defendants are therefore entitled to summary judgment on the issue of qualified immunity on Plaintiff's conditions of confinement claim.

### B.    Inadequate Medical Care

It has been clearly established since at least 2013 that "failing to provide ... life saving measures to an inmate in obvious need can provide the basis for liability under § 1983 for deliberate indifference." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 679 (9th Cir. 2021) (quoting *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013)). Summarizing case law established prior to the events giving rise to this case, the Ninth Circuit explained in *Sandoval*:

> Our cases make clear that prison officials violate the Constitution when they "deny, delay or intentionally interfere" with needed medical treatment. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). The same is true when prison officials choose a course of treatment that is "medically unacceptable under the circumstances." *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)), *overruled on other grounds by Peralta*, 744 F.3d 1076.

*Sandoval*, 985 F.3d at 679.

Thus, case law which existed prior to the events giving rise to this lawsuit established that failure to provide care to an inmate in obvious need (as sufficient evidence exists for a jury to conclude Defendants did here) violates that inmate's constitutional right to adequate medical

care. Accordingly, viewing the evidence in the light most favorable to Plaintiff (*i.e.,* that

Defendants heard and ignored Plaintiff's cellmate's alert that Plaintiff was "down" for 15-20

minutes), Defendants are not entitled to summary judgment on qualified immunity with respect

to the claim based on constitutionally inadequate medical care.

## CONCLUSION

For the reasons above, Plaintiff's Motion for Summary Judgment (ECF No. 60) is

DENIED. Defendants' Motion for Summary Judgment (ECF No. 44) is GRANTED with respect

to the conditions of confinement claim on the basis of qualified immunity and DENIED with

respect to Plaintiff's claim of deliberate indifference to a serious medical need.

DATED this <u>30th</u> day of May 2024.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge